AO 91 (REV.5/85) Criminal Complaint

AUSA Benjamin F. Langner (312) 353-2817
AUSA Margaret J. Schneider (312) 353-1875

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

UNITED STATES OF AMERICA

v.

RONALD WATTS and
KALLATT MOHAMMED

Corrected 2/13/12 *BPL*

**CRIMINAL COMPLAINT**

CASE NUMBER:
*12 CR 87*

**UNDER SEAL**

**FILED**
2-6-12
FEB 0 6 2012

MAGISTRATE JUDGE MARIA VALDEZ
UNITED STATES DISTRICT COURT

I, the undersigned complainant, being duly sworn on oath, state that the following is true and correct to the best of my knowledge and belief: On or about November 21, 2011, at Chicago, in the Northern District of Illinois, Eastern Division, RONALD WATTS and KALLATT MOHAMMED defendants herein:

stole, purloined, and knowingly converted to their own use money belonging to the United States, namely, approximately $5,200 in funds belonging to the United States, which funds defendants were not entitled to receive;

in violation of Title 18, United States Code, Sections 641 and 2. I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this complaint is based on the facts contained in the Affidavit which is attached hereto and incorporated herein.

Signature of Complainant
CRAIG HENDERSON
Special Agent, Federal Bureau of Investigation

Sworn to before me and subscribed in my presence,

February 6, 2012                                          at        Chicago, Illinois
Date                                                                       City and State

Maria Valdez, U.S. Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

UNITED STATES DISTRICT COURT    )
                                      )    ss

NORTHERN DISTRICT OF ILLINOIS    )

## AFFIDAVIT

I, CRAIG HENDERSON, being duly sworn, state as follows:

1.    I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since approximately 1994. I am currently assigned to The FBI's City Public Corruption Squad, and my responsibilities include the investigation of public corruption offenses.

2.    This affidavit is submitted in support of a criminal complaint alleging that Ronald WATTS and Kallatt MOHAMMED have violated Title 18, United States Code, Sections 641 and 2. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging WATTS and MOHAMMED with theft of government funds, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendants committed the offense alleged in the complaint.

3.    The information in this Affidavit is based on interviews of witnesses, my own observations and actions, information received from other law enforcement agents, my experience and training, and the experience of other agents.

1

## PROBABLE CAUSE

4.      As set forth below, the evidence collected during this investigation revealed that Chicago Police Officers Ronald WATTS and Kallatt MOHAMMED stole money that they believed to be drug proceeds from an individual who they believed to be associated with narcotics traffickers.   Specifically, on November 21, 2011, after being notified by a Cooperating Witness ("CS5")[1]—who unbeknownst to WATTS and MOHAMMED was working with the FBI—that s/he (CS5) was tasked by narcotics traffickers with transporting drug proceeds from one location to another, WATTS and MOHAMMED took the money from CS5 and then, later, paid CS5 a portion of the money in exchange for allowing them to steal the drug proceeds.   The money stolen from CS5 was government funds that had been given to CS5 by the FBI.

I.      *November 21, 2011 Theft*

5.      According to CS5, in approximately early September 2011, CS5 spoke with WATTS in an unrecorded conversation.   According to CS5, WATTS wanted to know if anything was going on.   WATTS told CS5 that if CS5 found out something was going to

---

[1] CS5 is homeless and lives on the streets of Chicago.  The information that CS5 provided to law enforcement regarding his/her telephonic and in person conversations with WATTS has been corroborated through surveillance, recorded conversations, and telephone subscriber records.  CS5 participated in multiple FBI covert operations in which WATTS and MOHAMMED have stolen alleged drug proceeds from CS5.  According to CS5's CPD criminal history, CS5 has been arrested 99 times and has a total of 16 convictions, including convictions for theft, armed robbery and multiple drug-related offenses.  CS5 is working with the FBI in exchange for monetary payments.  To date, CS5 has been paid approximately $3,250.00 in relation to this investigation.  According to CS5, CS5 has known WATTS for several years and has been stopped by WATTS on multiple occasions and has had conversations with WATTS about CS5's role as a drug courier.

2

happen, CS5 should call him or go to the station and ask for WATTS or MOHAMMED. Based on CS5's prior dealings with WATTS, including a prior instance where WATTS and CS5 engaged in a transaction similar to the one discussed herein, CS5 interpreted this to mean that WATTS wanted to know when CS5 would be transporting money for drug dealers so that WATTS could steal the money from CS5 in exchange for a payment to CS5.

      6.    On November 18, 2011, at approximately 1:25 p.m., CS5 placed a recorded telephone call to WATTS at phone number (773) 848-4761, which is subscribed to in the name of RONALD WATTS ("Target Phone 2").[2] During the ensuing conversation, after CS5 confirmed that s/he was speaking to "Sergeant Watts," CS5 told WATTS, "I got one going on."[3] WATTS responded, "When?" CS5 said that it was going to happen no later than "Monday" [November 21, 2011]. WATTS then said, "Make sure you call me."

---

[2] At various points in the Affidavit, I will offer my interpretations of certain recorded conversations. My interpretations of these conversations are based on my knowledge of the investigation to date, the contents and context of the conversations, prior and subsequent conversations, the results of physical surveillance, conversations with other officers and agents and my training and experience. Some of these summaries do not include references to all the topics covered during the course of the conversations. In addition, the summaries do not necessarily include references to all statements made by the speakers on the topics that are mentioned. For these recorded conversations, I have relied on draft - not final - transcriptions of the conversations, as well as my own review of the recordings.

[3] The identification of WATTS's voice is based on the following: (a) CS5 identified the individual to whom s/he spoke as WATTS; (b) during a recorded phone call, the CS5 asks if s/he is speaking to "Watts" and WATTS confirms his identity; (c) FBI Agents who listened to the recording of that phone call confirmed that the same voice is speaking wherever a statement herein is attributed to WATTS; and (d) the phone is subscribed in WATTS's name.

7.      On November 21, 2011, at approximately 12:45 p.m., CS5 placed a recorded phone call to WATTS at Target Phone 2. During the call, CS5 told WATTS, "It's gonna go on. I got to meet them at McDonald's on twenty-sixth." WATTS confirmed that CS5 was talking about the McDonald's near the intersection of 26th Street and Martin Luther King Drive in Chicago. CS5 told WATTS that s/he was going to pick up a bag from one car and walk it to another car on 29th Street. CS5 said that s/he was supposed to be at McDonald's in one hour. WATTS then told CS5 that he was also going to be there in his car.

8.      According to pen register records for Target Phone 2, at approximately 12:49 p.m., Target Phone 2 called telephone number (708) 527-7823, which is subscribed to in the name of KALLATT MOHAMMED ("Target Phone 1"). The call lasted 2 minutes and 12 seconds. Based on the timing of this phone call in relation to the calls between CS5 and WATTS, I believe that WATTS was calling MOHAMMED to coordinate MOHAMMED's participation in stealing the drug money allegedly being delivered by CS5.

9.      At approximately 12:55 p.m., CS5 placed another recorded phone call to WATTS at Target Phone 2 and during the ensuing conversation, WATTS asked CS5 if s/he was "headed up that way now?" CS5 responded, "In a few minutes." WATTS then told CS5, "I'll be in the area."

4

10.     At about 1:13 p.m., CS5 was dropped off by law enforcement agents near the intersection of 26th Street and Martin Luther King Drive, Chicago, Illinois.[4]

11.     According to pen register records for Target Phone 2, at approximately 1:15 p.m., Target Phone 2 received an incoming call from Target Phone 1. The duration of this call was 1 minute and 2 seconds.

12.     According to pen register records for Target Phone 2, at approximately 1:32 p.m., Target Phone 2 called Target Phone 1, and the duration of the call was 9 seconds. A few seconds later, Target Phone 1 called Target Phone 2, and this call lasted approximately 1 minute and 5 seconds. Shortly thereafter, a third call was made by Target Phone 2 to Target Phone 1, which lasted 52 seconds.

13.     At approximately 1:44 p.m., a law enforcement officer working with the FBI and acting in an undercover capacity, approached CS5 in a vehicle at the McDonald's restaurant located in the vicinity of 26th Street and Martin Luther King Drive in Chicago, and handed CS5 a black bag containing approximately $5,200. The bag also contained a court-authorized tracking device. CS5 then walked south along Martin Luther King Drive, turned east on 29th Street, and then turned north on South Vernon Street.

14.     Based on pen register records for Target Phone 2, WATTS made two attempts to contact CS5 between 1:47 p.m. and 1:56 p.m., but CS5 did not answer these phone calls

---

[4] Prior to being dropped off, CS5 was searched by the FBI for the presence of excess paper currency and none was found. CS5 was provided two recording devices, which were turned on by an FBI Agent.

because during this time CS5 was "transporting the drug proceeds" and was instructed by FBI Agents not to answer the telephone.

15.     At approximately 1:56 p.m.,[5] based on surveillance video captured by a camera operated by an FBI agent near the car to which CS5 was supposed to deliver the "drug proceeds," MOHAMMED approached CS5 near 2795 South Vernon in a black four door Hyundai Azera bearing Illinois license plate 918 1182,[6] and took the bag containing $5,200 from CS5. Based on recordings of the conversation between MOHAMMED and CS5, the following is a partial transcript:[7]

| | |
|---|---|
| MOHAMMED: | Where it at, where it at? In the bag? |
| CS5: | Grab the bag. |
| MOHAMMED: | Fuck it, I'm gone. |
| CS5: | Sir. |
| MOHAMMED: | Get the fuck out of here. |

---

[5] Based on a review of pen register information and the results of the recording devices, I believe that the time stamp on the recording device, which indicated that the seizure occurred at 2:01 p.m., was running approximately 5 minutes behind the actual time. Similar time adjustments have been made to all events described herein where I am relying on the recording device for an approximation of the time.

[6] A search of the Illinois Secretary of State database shows Illinois license plate 918 1182 is registered to KALLATT MOHAMMED, [Redacted], Chicago, Illinois.

[7] The identification of MOHAMMED's voice is based on: (a) CS5's identification of the speaker as MOHAMMED; (b) the fact that MOHAMMED is clearly visible on the video recording of this conversation; and (c) CPD IAD Officers who have listened to the recording confirmed that MOHAMMED is speaking wherever a statement herein is attributed to MOHAMMED.

| | |
|---|---|
| CS5: | Sir, can I get some money, sir. Hey, hey, I thought you was going to give me some money. |
| MOHAMMED: | Get the fuck out of here. |
| CS5: | Uh uh, c'mon. I don't get no money? |
| MOHAMMED: | No, you don't get shit. But meet...meet me over off King Drive. |
| CS5: | What? |
| MOHAMMED: | Meet me on King Drive. |
| CS5: | Okay. |
| MOHAMMED: | 30th. |
| CS5: | 30th, okay. |

16.     According to pen register records for Target Phone 2, at approximately 1:57 p.m., Target Phone 1 called Target Phone 2, and the duration of the call was 7 minutes and 23 seconds.

17.     At approximately 2:04 p.m., CS5 placed a phone call to WATTS at Target Phone 2. The conversation was not recorded. However, CS5's portion of the conversation was recorded by the two recording devices that FBI agents placed on CS5. During the ensuing conversation, CS5 said the following:

> Hey WATTS, he told me to meet, he told me to meet him on, on 30th. He ain't gave me no, no money yet man. (Pause) Oh, okay. I mean, man, c'mon on now, I did everything right man. (Pause) Huh. (Pause) Okay, man. (Pause) on State? (Pause) Okay. By, by the El. How about White Castle or something?

(Pause) Yeah (Pause). Man, c'mon be there now Watts, alright? But I'm going around, I'm going around the other way, cause, I... (Pause) I didn't see the, I didn't see the car that I was supposed to went to anyway, so, okay. So, I'm, but I mean I got to move from the El. (Pause) So, I got me somebody snatching me in the car or something. (Pause) I'm on my way right now. C'mon on don't do me now. (Pause) Okay, my man. I'm, I'm on my way, I'm on my way, I'm on my way.

18.    According to pen register records for Target Phone 2, at approximately 2:06 p.m., Target Phone 2 called Target Phone 1. This call had a duration of 1 minute and 17 seconds.

19.    At about 2:08 p.m., law enforcement agents conducting surveillance observed WATTS and MOHAMMED meeting together in the area of 5700 and 5800 South Princeton Avenue, Chicago, Illinois. WATTS was observed driving a Cadillac bearing Illinois license plate G92 3987.[8] Based on the court-authorized tracking device, agents were able to recover the bag that MOHAMMED had seized from CS5 from an alley behind 5924 South LaSalle Street, Chicago, Illinois, which is approximately a half mile from the location where agents observed WATTS and MOHAMMED meeting, about twenty minutes after the meeting.[9]

20.    Shortly after the surveilled meeting between WATTS and MOHAMMED, according to pen register records for Target Phone 2, Target Phone 2 called Target Phone 1. This call had a duration of 6 minutes and 9 seconds.

---

[8] A check of the Illinois Secretary of State database revealed that Illinois license plate G92 3987 is registered to RONALD WATTS, [Redacted], Chicago, Illinois.

[9] Surveillance agents later observed MOHAMMED returning to his residence, located at [Redacted], Chicago, Illinois, at approximately 2:42 p.m.

8

21.     At approximately 2:29 p.m., CS5 again placed a phone call to WATTS at Target Phone 2 and only CS5's side of the conversation was captured by the recording devices. During this conversation, CS5 said the following:

> Hey, I'm right across the street from White Castle. What you in, what you in? (Pause) What, what? (Pause) You what? (Pause) Like, walk over there, like what? (Pause) Walgreens? This is White Castle. (Pause) Oh, oh okay, okay.

22.     At approximately 2:42 p.m., CS5 met with WATTS in the parking lot of a Walgreens store near the intersection of 22nd Street and Canal Street, Chicago, Illinois. Based on recordings of the conversation, CS5 told WATTS "about time. ...Man I thought you was going to (UI)." WATTS responded "No, never doubt brother, (UI). Who always takes care of you?" CS5 replied "You do, WATTS." WATTS then said "There's five large brother," and, according to CS5, handed CS5 some money.

23.     At approximately 2:54 p.m., CS5 provided agents with $400 which, according to CS5, CS5 received from WATTS. CS5's person was searched at that time and he was not in possession of any additional paper currency. During a debrief of CS5, CS5 stated that WATTS met him/her in the Walgreens parking lot and provided him with the money, which CS5 did not count and simply placed into a pocket.[10]

24.     According to pen register records, Target Phone 2 and Target Phone 1 were in contact on two other occasions on November 21, 2011. At approximately 2:58 p.m., Target

---

[10] FBI agents confirmed that the serial numbers on the money received from CS5 matched the serial numbers on the money that FBI agents placed in the black bag seized by MOHAMMED.

Phone 2 placed a phone call to Target Phone 1, which lasted for 1 minute and 54 seconds.

At approximately 3:14 p.m., Target Phone 2 received an incoming telephone call from Target

Phone 1, and this call had a duration of 1 minute and 7 seconds.

## CONCLUSION

25.     Based on the facts set forth above, there is probable cause to believe that

defendants Ronald WATTS and Kallatt MOHAMMED stole, purloined, and knowingly

convert to their own use money belonging to the United States, namely, approximately

$5,200 in funds belonging to the United States, which funds defendants were not entitled to

receive, in violation of Title 18, United States Code, Sections 641 and 2.


        FURTHER AFFIANT SAYETH NOT.



        _____

        CRAIG HENDERSON
        Special Agent, Federal Bureau of Investigation


SUBSCRIBED AND SWORN to before me on February 6, 2012.

        _____

        Maria Valdez
        United States Magistrate Judge