```
               IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF ILLINOIS
                         EASTERN DIVISION


UNITED STATES OF AMERICA,         )    No. 12 CR 87-1
                                  )
              Plaintiff,          )
                                  )
         v.                       )    Chicago, Illinois
                                  )    July 19, 2013
RONALD WATTS,                     )    11:20 a.m.
                                  )
              Defendant.          )    Guilty Plea


              TRANSCRIPT OF PROCEEDINGS
       BEFORE THE HONORABLE SHARON JOHNSON COLEMAN

APPEARANCES:

For the Government:        HON. GARY S. SHAPIRO
                           United States Attorney, by
                           MS. MARGARET J. SCHNEIDER
                           MS. MEGAN C. CHURCH,
                           Assistant United States Attorneys
                           219 South Dearborn Street
                           Chicago, Illinois  60604


For the Defendant:         LAW OFFICES OF THOMAS GLASGOW
                           1834 Walden Office Square
                           Suite 500
                           Schaumburg, Illinois  60173
                           BY:  MR. WILLIAM B. BEATTIE






          TRACEY DANA McCULLOUGH, CSR, RPR
                Official Court Reporter
             219 South Dearborn Street
                     Room 1426
              Chicago, Illinois  60604
                   (312) 435-5570
```

1            THE CLERK:  12 CR 87, USA versus Ronald Watts.
2            MS. SCHNEIDER:  Good morning, Your Honor.  Maggie
3    Schneider and Megan Church on behalf of the United States.
4            MR. BEATTIE:  Good morning, Your Honor.  William
5    Beattie, B-E-A-T-T-I-E, on behalf of Ronald Watts, who's
6    present to my right.
7            THE COURT:  Mr. Watts.
8            DEFENDANT WATTS:  Good morning.
9            THE COURT:  Good morning.  And why are we here today?
10           MS. SCHNEIDER:  I believe we are here for Mr. Watts
11   to enter a blind plea of guilty to the information.
12           MR. BEATTIE:  That is correct, Your Honor.
13           THE COURT:  All right.  And so this matter was set
14   for trial on Monday.  And there appears to have been a change,
15   is that correct?
16           MR. BEATTIE:  That's correct, Your Honor.
17           THE COURT:  Raise your hand, please, Mr. Watts.
18       (Defendant duly sworn.)
19           THE COURT:  All right.  Counsel, I need you to switch
20   with your client.
21           MR. BEATTIE:  I certainly will.
22           THE COURT:  All right. Sir, I need you to keep your
23   voice up so the Court can hear you.  The Court is going to ask
24   you a series of questions based on the information that I have
25   that you are considering changing your plea today.  The Court

1   needs to make sure you are competent to enter into such an
2   agreement or such a step.  The Court needs to make sure that
3   you have had the assistance of counsel, which I am certain that
4   you have.  The Court needs to make sure that you understand
5   what all your trial rights are, what the charges are against
6   you, that there's a factual basis for whatever plea you decide
7   to enter.  Do you understand?
8               DEFENDANT WATTS:  Yes, ma'am.
9               THE COURT:  During this time if at any time you wish
10  to have a conference with your lawyer, you have any question
11  about what's going on, if you look like you have a question
12  about what's going on, this Court will give you the opportunity
13  and encourage you to step to the side and talk to your lawyer.
14  All right.
15              MS. CHURCH:  Yes, ma'am.
16              THE COURT:  Also, sir, understand that if -- until
17  you change your plea before this Court, you still have a plea
18  of not guilty, and you can persist in that plea.  There is no
19  obligation for you to go through with it.  Do you understand
20  that?
21              DEFENDANT WATTS:  Yes, ma'am.
22              THE COURT:  It's a blind plea, sir, and so some of
23  the answers you will be asked to give here will be
24  incriminating.  And if you give false answers to particular
25  questions, you may be prosecuted for perjury.  Do you

1   understand?
2          DEFENDANT WATTS:  Yes, ma'am.
3          THE COURT:  I'm going to go ahead then, sir.  State
4   your full name.
5          DEFENDANT WATTS:  Ronald Watts, W-A-T-T-S.
6          THE COURT:  And you can just relax.  That mike is
7   going to pick up everything where you are.
8          DEFENDANT WATTS:  All right.
9          THE COURT:  All right.  How old are you, sir?
10         DEFENDANT WATTS:  I am 50 years old.
11         THE COURT:  And give me the city and the state that
12  you live in.
13         DEFENDANT WATTS:  I live in Chicago, Illinois.
14         THE COURT:  Are you married, sir?
15         DEFENDANT WATTS:  No.
16         THE COURT:  How far did you get in your education?
17         DEFENDANT WATTS:  I have a masters degree in public
18  safety administration.
19         THE COURT:  And so you're able to read and write, is
20  that correct?
21         DEFENDANT WATTS:  Yes, ma'am.
22         THE COURT:  Sir, can you tell the Court what type of
23  work you have done in the last three years.
24         MS. CHURCH:  I was a sergeant of police for the City
25  of Chicago.

1      THE COURT:  And would you consider yourself in good
2  physical health?
3      DEFENDANT WATTS:  Yes, ma'am.
4      THE COURT:  Have you had any medical diagnosis that
5  this Court needs to be aware of?
6      DEFENDANT WATTS:  No, ma'am.
7      THE COURT:  And are you under medication for any
8  diagnosis?
9      DEFENDANT WATTS:  Yes, ma'am.
10     THE COURT:  What is that medication?
11     DEFENDANT WATTS:  High blood pressure.
12     THE COURT:  And does that -- have you taken that
13 medication today?
14     DEFENDANT WATTS:  Yes, ma'am.
15     THE COURT:  Is there anything about that medication
16 that would affect your ability to understand what's going on
17 here today?
18     DEFENDANT WATTS:  No, ma'am.
19     THE COURT:  Have you taken any other drugs, illegal,
20 legal, alcoholic beverages within the last 24 hours?
21     DEFENDANT WATTS:  No, ma'am.
22     THE COURT:  Have you ever been under the care of a
23 physician or in a hospital for a mental condition?
24     DEFENDANT WATTS:  No, ma'am.
25     THE COURT:  Mr. Beattie, do you have any doubt as to

1    your client's competency to change his plea at this time?
2            MR. BEATTIE:  I do not, Your Honor.  I spoke to him
3    earlier, as did Mr. Glasgow.
4            THE COURT:  Go ahead.
5            MR. BEATTIE:  Well, Judge -- I'm sorry.  No, I do not
6    have a doubt, Judge.  I spoke to Mr. Watts this morning and
7    Mr. Glasgow did as well.
8            THE COURT:  All right.  And does the government have
9    any doubt as to the competency of Mr. Watts?
10           MS. SCHNEIDER:  We do not, Your Honor.
11           THE COURT:  Then the Court finds that Ronald Watts is
12   competent to offer a change of plea at this time.  Tell me the
13   name of your lawyer, sir.
14           DEFENDANT WATTS:  Thomas Glasgow and Bill Beattie.
15           THE COURT:  All right.  And you've had enough time to
16   speak to them, is that correct?
17           DEFENDANT WATTS:  Yes, ma'am.
18           THE COURT:  And you've told them everything you know
19   about the case?
20           DEFENDANT WATTS:  Yes, ma'am.
21           THE COURT:  And you're satisfied with their advice
22   and their efforts on your behalf?
23           DEFENDANT WATTS:  Yes, ma'am.
24           THE COURT:  Sir, you have been charged in one count.
25   Am I correct, it's one count?

1        MS. SCHNEIDER: Yes, Your Honor.

2        THE COURT: One count of the indictment. And there's
3   also a forfeiture count. But one count of the indictment of
4   stealing and knowingly converting money to your own use. And
5   that money was -- belonged to the United States in violation of
6   18 U.S.C. 641 Sections and 2 -- Sections 641 and 2. You have
7   discussed this indictment with your counsel, is that correct?

8        DEFENDANT WATTS: Yes, ma'am.

9        THE COURT: All right. Mr. Beattie, without
10  referring to the facts of this case, can you tell the Court in
11  general what you talked to with your client about the charges.

12       MR. BEATTIE: About the charges, Judge, we have
13  informed Mr. Watts both what the substance and the nature of
14  the charges were. We've reviewed the evidence that has been
15  provided to us with Mr. Watts as to this and all the other
16  evidence that the government has provided us. We did discuss
17  with Mr. Watts the burden of proof that the prosecution has in
18  this matter. We did discuss with Mr. Watts the government's
19  proffer of the case and the evidence that they indicated that
20  they intended to bring to bear at trial. And we did discuss
21  with Mr. Watts his right that he had to testify or not to
22  testify and again the burden of proof that the prosecution has
23  in this matter.

24       THE COURT: All right. Thank you. And, Mr. Watts,
25  the Court notes that you were present for the pretrial

1  conference in this case, and that you -- the Court believes you
2  do understand that you have certain trial rights when you pled
3  not guilty.  You do understand that, is that correct?
4          DEFENDANT WATTS:  Yes, ma'am.
5          THE COURT:  All right.  And those trial rights are
6  given to you by the Constitution and the laws of the United
7  States.  And at this moment, still at this moment you have a
8  right to proceed to trial.  Do you understand that?
9          DEFENDANT WATTS:  Yes, ma'am.
10         THE COURT:  You have a right to persist in your plea
11 of not guilty, go to trial, have a speedy trial, to see and
12 hear all witnesses called against you.  To use the subpoena
13 power of the Court to present witnesses on your own behalf, and
14 you have a right to have your lawyer cross-examine and question
15 witnesses called against you.  Do you understand that?
16         DEFENDANT WATTS:  Yes, ma'am.
17         THE COURT:  You understand, sir, that at all times
18 you would be presumed innocent.  You would not have to prove
19 your innocence.  It would be the government that would have to
20 prove you guilty beyond a reasonable doubt by competent
21 evidence.  Do you understand that?
22         DEFENDANT WATTS:  Yes, ma'am.
23         THE COURT:  Do you understand, sir, that if you chose
24 to have a trial, you would have a right not only to present
25 evidence on your own behalf, but you'd have a right to testify

1  in your own behalf if you chose to do so?  You would also have
2  a right not to testify in your own behalf, and that choice
3  could not be used as guilt, as an indicator of guilt on your
4  behalf.  Do you understand that?
5              DEFENDANT WATTS:  Yes, ma'am.
6              THE COURT:  Do you understand, sir, that if you went
7  to trial by jury, you would have a right to -- you would have
8  12 persons on that jury.  The persons would be drawn from
9  citizens from the Northern District of Illinois.  They would be
10 brought to this courtroom.  This Court would question them at
11 length about their qualifications.  And you and your lawyer
12 would be present along with the government and have a chance to
13 have input into that questioning.  And after those questions
14 and answers were given, you would have the opportunity to ask
15 for certain of those persons to be disqualified based on biases
16 or other disqualifying factors.  Do you understand?
17             DEFENDANT WATTS:  Yes, ma'am.
18             THE COURT:  You understand the government would have
19 the same right to excuse potential jurors based on bias or
20 disqualifying factors?  Do you understand that?
21             DEFENDANT WATTS:  Yes, ma'am.
22             THE COURT:  You also would have the right after
23 listening to the answers of all of the potential jurors to ask
24 that a limited number of persons be excused just because you
25 felt they couldn't be fair to your case.  Do you understand

1  that?

2              DEFENDANT WATTS:  Yes, ma'am.

3              THE COURT:  And the government would have that same
4  right to have a limited the number of persons excused on that
5  basis.  Do you understand?

6              DEFENDANT WATTS:  Yes, ma'am.

7              THE COURT:  After the jury was impaneled, the
8  evidence would be presented to the jury.  And after they heard
9  all of the evidence, they would be given the law from this
10 Court, and then they would go to deliberate.  And during those
11 deliberations, they would have to give consideration to the
12 count against you and they would have to go into it presuming
13 your innocence.  And it is only after they deliberated and
14 looked at all of the evidence and determined whether or not the
15 government proved your guilt beyond a reasonable doubt that
16 they would reach a verdict.  And if it was one of guilty, it
17 would have to be beyond a reasonable doubt that they would have
18 to -- the standard they would have to use.  Do you understand
19 that?

20             DEFENDANT WATTS:  Yes, ma'am.

21             THE COURT:  You would also have the right, sir, to
22 have a bench trial, meaning a trial by the judge.  There would
23 be no jury.  I would try the case.  This Court would hear the
24 evidence.  This Court would review the evidence and apply it to
25 the law without any jury being involved.  Do you understand

1  that?

2        DEFENDANT WATTS: Yes, ma'am.

3        THE COURT: You understand if you went to trial
4  before this Court, you'd have the same rights you would have
5  before a jury trial. To be presumed innocent at all times, and
6  that the government would be held to the same burden of proof
7  beyond a reasonable doubt. You would have a chance to testify
8  in your own behalf or not testify. And if you chose not to
9  testify, that would not be held against you. Do you understand
10 that?

11       DEFENDANT WATTS: Yes, ma'am.

12       THE COURT: You understand, sir, that if you were
13 convicted by this Court or by a jury, at the close of the case
14 you would have a right to appeal a guilty conviction? Do you
15 understand that?

16       DEFENDANT WATTS: Yes, ma'am.

17       THE COURT: Do you understand, sir, that if you
18 decide to plead guilty today, you waive all the trial rights I
19 have given to you? Meaning they go away. You will not have
20 the chance to go back and do a do over to say I want a trial
21 now. Do you understand that?

22       DEFENDANT WATTS: Yes, ma'am.

23       THE COURT: Do you understand, sir, if you decide to
24 plead guilty here and I accept your plea of guilty, not only
25 will there not be a trial, this Court will enter a finding of

1  guilty and then proceed to sentence you on the basis not only
2  of your plea, but on the basis of considering a presentence
3  investigation report, which will be very thorough.  I will hear
4  the arguments presented in writing and orally by your counsel,
5  by the government's counsel.  The Court will look at the
6  maximum possible sentences, the advisory guidelines, and the
7  3553 (a) factors to make sure that the Court fashions a
8  sentence that is sufficient but not greater than necessary in
9  your case.  Do you understand that?
10         DEFENDANT WATTS:  Yes, ma'am.
11         THE COURT:  Is there a plea agreement or a plea
12 declaration?
13         MS. SCHNEIDER:  Judge, we have an agreed factual
14 basis that I can read.
15         THE COURT:  All right.  Again, but there is no
16 written plea agreement?
17         MS. SCHNEIDER:  There is not, Your Honor.
18         MR. BEATTIE:  There is not, Your Honor.  We did have
19 a chance to review the state's -- forgive me, the government's
20 declaration with Mr. Watts before Your Honor arrived this
21 morning.
22         THE COURT:  All right.
23         MR. BEATTIE:  So we've reviewed that.
24         THE COURT:  But since there has been no written plea
25 agreement, sir, your intention is to enter a plea without any

1   agreement as to any outcome, any parameters, any sentence from
2   the government; is that correct?
3           MR. BEATTIE:  Judge --
4           DEFENDANT WATTS:  May I have a moment, please.
5           THE COURT:  Yes.
6       (Brief pause.)
7           THE COURT:  Counsel, you want to take a moment to
8   talk to your client?
9           MR. BEATTIE:  Judge, yes.
10      (Brief pause.)
11          MR. BEATTIE:  One moment, Judge.
12          THE COURT:  Take all the time you need, Counsel.
13      (Brief pause.)
14          MR. BEATTIE:  Thank you for your time, Judge.
15          THE COURT:  Once again the Court needs to know are
16  there any agreements or promises that have been made to cause
17  you, Mr. Watts, to enter into a change of plea?
18          DEFENDANT WATTS:  No.
19          THE COURT:  And although there appears to be an
20  agreement as to the factual basis that will be read in a few
21  moments to the Court, you have not reached any other agreement
22  with the government, is that correct?
23          DEFENDANT WATTS:  That is correct.
24          THE COURT:  And you discussed the consequences of
25  your entering into or following up -- following through with

1   this plea with your lawyer, is that correct?

2              DEFENDANT WATTS:  That is correct.

3              THE COURT:  Will the government please set forth the
4   maximum possible sentence and the expected advisory guidelines.

5              MS. SCHNEIDER:  Yes, Judge.  The maximum sentence in
6   this case is a sentence of 10 years imprisonment, a maximum
7   fine of $250,000, and a term of supervised release of not more
8   than 3 years.  In addition, the defendant would be required to
9   pay a $100 special assessment.

10             With respect to the sentencing guidelines, based on
11  the facts that we expect the defendant to admit to today, the
12  offense level would be a 6, which would result in a guidelines
13  range of zero to 6 months.  However, the government intends to
14  offer evidence in support of some additional enhancements that
15  we believe would raise the level likely to a 14, which would be
16  a range of 15 to 21 months imprisonment.

17             THE COURT:  All right.  And is that your
18  understanding of what the maximum possible punishments are,
19  sir?

20             DEFENDANT WATTS:  Yes, ma'am.

21             THE COURT:  And with your counsel is that your
22  understanding of what the government's advisory guidelines
23  calculations are at this point or may be expected to be?

24             MR. BEATTIE:  That's correct, Your Honor.

25             THE COURT:  All right.  Understanding that you would

1  be presenting your side of what you would be requesting as a
2  sentence, is that correct?
3            MR. BEATTIE:  That's right, Your Honor.  We would
4            THE COURT:  All right.  As to this written, written
5  document with the facts, is there a signature at the close of
6  that, the plea declaration or no?
7            MS. SCHNEIDER:  Judge it's actually -- it's actually
8  just my notes.  I just wrote up a factual basis to show to them
9  to see if we could come to an agreement.  It's really something
10 to be done orally.
11           THE COURT:  All right.  So there's no signed plea
12 declaration?
13           MR. BEATTIE:  There is not, Judge.
14           THE COURT:  Sir, do you understand that the ultimate
15 decision as to what the sentence will be is this Court's?  Do
16 you understand that?
17           DEFENDANT WATTS:  Yes, ma'am.
18           THE COURT:  So any recommendations that will come
19 from your lawyer or the government and even the guidelines are
20 merely advisory.  That even after you enter this plea, the
21 Court -- it's separate from the Court's sentence, and this
22 Court can enter a sentence that is greater than what is
23 recommended or less.  Do you understand that?
24           DEFENDANT WATTS:  Yes, ma'am.
25           THE COURT:  Has anyone forced you or threatened you

1  in any way to cause you to change your plea?

2          DEFENDANT WATTS:  No, ma'am.

3          THE COURT:  All right.  The government want to state
4  what your factual basis is.

5          MS. SCHNEIDER:  Yes, Judge.  If the case were to
6  proceed to trial, the government would present evidence to
7  prove that on or about November 21st, 2011 in Chicago,
8  defendant Ronald Watts and his co-defendant Kallatt Mohammed
9  stole, purloined, and knowingly converted to their own use
10 approximately $5,200 belonging to the United States, which they
11 were not entitled to receive, in violation of Title 18 United
12 States Code Sections 641 and 2.

13         Specifically the government would prove that in
14 approximately early September of 2011 a cooperating witness,
15 who I'll refer to as the CS, who unbeknownst to Mr. Watts was
16 working with the FBI, told Mr. Watts that he would be
17 transporting money for drug dealers.  Mr. Watts told the CS
18 that he wanted to know when the CS would be transporting money
19 for drug dealers so that Watts could steal the money from the
20 CS in exchange for a payment to the CS.  At the time Mr. Watts
21 was a Chicago Police sergeant who knew the CS through his work
22 as a police officer.

23         And November 18th of 2011, Mr. Watts was contacted by
24 contacted by the CS to let him know that the CS would be
25 transporting money for drug dealers in the near future.  Mr.

1  Watts told the CS to be sure to call him when he had more
2  details.  On November 21st of 2011 at around 12:45 p.m., the CS
3  called Mr. Watts and told him that he would be transporting
4  money for drug dealers that day, and he also gave Watts -- Mr.
5  Watts the details of where and when he would be doing so.  Mr.
6  Watts told the CS that he would be there.
7          Mr. Watts then contacted his co-defendant Mohammed
8  and asked Mohammed to help with taking the money from the CS.
9  Mr. Watts told Mohammed to meet the CS and take the bag, and
10 Mohammed agreed to do so.  Thereafter at about 1:56 p.m. Mr.
11 Mohammed approached the CS on the 2700 block of south Vernon
12 and took the bag containing the $5,200 from the CS.  A short
13 time later Mr. Watts and Mohammed met in the area of 5700 South
14 Princeton Avenue in Chicago, where Watts took a portion of the
15 money from the bag.
16         After Mohammed took the bag from the CS, the CS
17 called Mr. Watts several times to arrange to meet so that the
18 CS could be paid a portion of the money that had been taken.
19 At about 2:42 p.m. Mr. Watts met with the CS in the parking lot
20 of a Walgreens store near 22nd Street and Canal Street in
21 Chicago.  At which time he gave the CS $400 in cash, which was
22 a portion of the $5,200 taken from the CS earlier that day.
23         The government would further prove that the $5,200
24 taken from the CS were funds belonging to the United States.
25         THE COURT:  You heard the recitation by the

```
 1   government as to what a factual basis would be for you to
 2   change your plea.  Did you hear what she just said?
 3              DEFENDANT WATTS:  Yes, ma'am.
 4              THE COURT:  Is there any changes that you'd like to
 5   make to that?
 6              DEFENDANT WATTS:  No, ma'am.
 7              THE COURT:  The Walgreens where?  Near Archer?
 8              MS. SCHNEIDER:  It was --
 9              THE COURT:  Between Archer and Canal or -- there's
10   no -- there is no Walgreens at Canal.
11              MS. SCHNEIDER:  Near 22nd and Canal in Chicago.  It's
12   in Chinatown.
13              THE COURT:  I know exactly where it is.  It's just
14   not by Canal.
15              DEFENDANT WATTS:  Right.
16              THE COURT:  So it's close to Archer.
17              MS. SCHNEIDER:  You're right.  I'm sorry.  It's near
18   Cermak and Archer.
19              THE COURT:  All right.  Thank you.  Is there anything
20   else you want to add to the statement or retract from the
21   statement?
22              DEFENDANT WATTS:  No, ma'am.
23              THE COURT:  All right.  Then, sir, it is time for me
24   to ask you what is your plea to the sole count of the
25   indictment?
```

```
 1              DEFENDANT WATTS:  Guilty.
 2              THE COURT:  All right.  Mr. Watts, you have stated
 3    you are guilty to Count 1 of the indictment.  By acknowledging
 4    that you are, in fact, guilty as charged, that you've had the
 5    assistance of counsel, you know what your trial rights are, you
 6    know what the maximum possible punishments are in this case and
 7    what the advisory guidelines at least at this point are, are
 8    recommending, that you have stated that your action today is
 9    voluntary, the Court accepts your plea of guilty and enters a
10    judgment of guilty on Count 1 of the indictment based on your
11    plea.
12              The Court will set a date for sentencing when, Mrs.
13    Hunt?  October what?
14              THE CLERK:  October 9th in the afternoon, 1:30.
15              MS. SCHNEIDER:  That's fine.
16              THE COURT:  Counsel.
17              MR. BEATTIE:  That would be great, Judge.  Thank you.
18              THE COURT:  October 9th at 1:30.  Any motion on
19    behalf of the government as to detention?
20              MS. SCHNEIDER:  No, Your Honor.  The conditions of
21    bond can stand at this time.
22              THE COURT:  All right. What I've just asked, Mr.
23    Watts, is you are now convicted of a crime, a felony.  And the
24    Court wanted to know if the government was asking that your
25    bond conditions be changed on that basis.  They are saying no.
```

1  That does not mean that the conditions do not remain in place,
2  and that any violations of the conditions will not have serious
3  ramifications.  Do you understand that?
4          DEFENDANT WATTS:  Yes, ma'am.
5          THE COURT:  The conditions will stay in place.
6  October 9th, 2013 at 1:30 for your sentence.  We will see you
7  then, sir.  Thank you very much.
8          DEFENDANT WATTS:  Thank you, ma'am.
9          MS. SCHNEIDER:  Thank you, Your Honor.
10         MR. BEATTIE:  Thank you, Your Honor.
11         THE COURT:  Thank you, Counsel.  The trial is
12 stricken for Monday.
13                          CERTIFICATE
14         I HEREBY CERTIFY that the foregoing is a true,
15 correct and complete transcript of the proceedings had at the
16 hearing of the aforementioned cause on the day and date hereof.
17
18 _/s/TRACEY D. McCULLOUGH_                    _September 4, 2014_
19 Official Court Reporter                      Date
   United States District Court
20 Northern District of Illinois
   Eastern Division
21
22
23
24
25